Eugene W. DeROCHEMONT, Plaintiff,

v.

COMMISSIONER—INTERNAL REVENUE SERVICE, and IRS Special Agents (Unknown), Defendants.

No. S 84–26.

United States District Court, N.D. Indiana, South Bend Division.

Feb. 26, 1986.

Eugene W. DeRochemont, Springfield, Mo., for plaintiff.

David H. Kreider, Asst. U.S. Atty., South Bend, Ind., Peter Sklarew, U.S. Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the Court on the defendant's, The Commissioner of Internal Revenue Service, Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Originally the defendant filed a motion to dismiss the plaintiff's, Mr. Eugene W. DeRochement, complaint. Subsequently, the defendant filed two affidavits, and a Memorandum and Order entered by Judge Rambo from the Middle District of Pennsylvania, in their supplemental materials on May 9,

1985. On May 28, 1985, the Court converted the Motion to Dismiss to a Motion for Summary Judgment, and, pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), ordered the plaintiff, a *pro se* litigant, to respond by June 28, 1985. The plaintiff filed an affidavit on June 14, 1985. In addition, the plaintiff filed a Motion for Default Judgment, a memorandum in support of the motion for default judgment, and a motion to permit joinder of parties, on November 22, 1985, December 4, 1985 and February 12, 1986, respectively. The jurisdiction of this court is predicated on 28 U.S.C. § 1331.

### BACKGROUND

The plaintiff filed this case subsequent to pleading guilty to six counts of claiming false income tax refunds in violation of Title 18, Section 287, and four counts of mail fraud. The plaintiff's claims arise from acts which occurred during the pendency of the Grand Jury's investigation of the plaintiff's activities.

The plaintiff was an accountant and worked for several businesses in Pennsylvania. In addition, the plaintiff prepared tax returns for a woman named Brenda Wilson (Wilson). The defendants began an investigation of the plaintiff and Wilson in response to some "highly suspect 1983 Forms 1040 in the names of EUGENE DeROCHEMENT and BRENDA WILSON." The plaintiff, apparently fabricated income tax returns for himself and Wilson for the years 1979 through 1982. On May 28, 1983 the plaintiff and Wilson married.[1] The plaintiff and Wilson were located in Arizona on May 25, 1983. At that time they were "confronted" with the allegations of the fraudulent income tax returns, and were served with Grand Jury subpoenas requiring them to appear on June 15, 1983. Neither the plaintiff nor Wilson appeared on June 15, 1983, and on June 16, 1983 Judge Sylvia Rambo of the Federal District Court for the Middle District of Pennsylva-

---

1. To avoid confusion Brenda Wilson DeRochemont will be referred to as Wilson throughout the Court's discussion.

nia, issued a bench warrant for the arrest of the plaintiff and Wilson. On or about July 20, 1983, the plaintiff and Wilson transferred several boxes, which contained among other things the records of the plaintiff's businesses, the accounting records for the plaintiff's clients, and the tax returns of Wilson which the plaintiff prepared for her, from Pennsylvania to Plymouth, Indiana. These boxes were then stored in the basement of a Furniture Store in Plymouth, Indiana, a business owned, operated and controlled by Wilson's brother. The arrest warrants were executed on July 21, 1983 and July 22, 1983, and plaintiff and Wilson were subsequently found guilty of contempt.

In September, 1983 Wilson decided to cooperate with the Grand Jury investigation and she was "debriefed" by the defendant's agents. This Court will not relate the sordid allegations which were revealed during the debriefing sessions. However, it is pertinent that Wilson disclosed that she had custody of the accounting records of the plaintiff. Wilson told the defendant's agents that the records were stored in cardboard boxes in the basement of a furniture store, in Plymouth, Indiana, owned and operated by her brother. Wilson was apparently unaware of the contents of all the boxes. She also stated, that until May 25, 1983, she had been unaware that the tax returns which the plaintiff had prepared for her had been fraudulent. As a result of Wilson's fear of reprisals from the plaintiff, she requested that the defendant's agents acquire a Grand Jury subpoena for the plaintiff's records.

A Grand Jury subpoena was issued, and the defendant's agents served the subpoena on Wilson while she was at her brother's store. The subpoena called for the custodian of "all business, tax and accounting records of Eugene W. DeRochemont and any company or concern owned or operated by Eugene W. DeRochemont including but not limited to accounting work papers, client files, federal, state and/or local tax returns, employment compensation records, bank records and cancelled checks, disbursement journals, and ledgers." Wil-

son then led the defendant's agents to the basement of the store where she and the plaintiff had placed the boxes. She "pointed out several cardboard boxes containing records" which the plaintiff "had placed in her custody." With Wilson's consent the defendant's agents reviewed the records contained in the boxes, "setting aside certain records which [the agents] stated did not fall within the scope of the subpoena ...." Following this review Wilson consented to the defendant's agent taking immediate possession of the records. Subsequently, the defendant's agents informed Wilson that the records were to be shipped to the IRS offices in Harrisburg, Pennsylvania.

## DISCUSSION

The plaintiff is proceeding *pro se. Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The role of the trial court is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983). Furthermore, *pro se* motions and complaints are held to less stringent pleading requirements.

The plaintiff filed a complaint alleging that the search and seizure violated the Fourth Amendment of the Constitution of the United States. In addition, the complaint and subsequently filed materials, apparently allege a violation of the First and Fifth Amendments of the Constitution of the United States, and the Civil Rights Act, 42 U.S.C. § 1983. All of these claims are dependent on a finding that the records, which were taken by the defendant's agents pursuant to the Grand Jury subpoena, were acquired through a search and seizure which violated the Fourth Amendment of the Constitution of the United States.

To prevail, the party seeking summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Royal Backes v. The Valspar Corporation*, 783 F.2d 77 (7th Cir. 1986); *Landgrebe Motor Transport, Inc. v. District 72, International Association of Machinists and Aerospace Workers*, 763 F.2d 241, 243–244 (7th Cir.1985); *Janowiak v. Corporate City of South Bend*, 750 F.2d 557, 559 (7th Cir.1984). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (*en banc*), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). Any reasonable inferences to be drawn from the facts presented must be viewed in a light most favorable to the non-moving party. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). In addition, conclusory statements made in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact. *First Commodity Traders v. Heinhold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985), *citing, Hall v. Printing and Graphic Arts Union*, 696 F.2d 494, 500 (7th Cir.1982).

In general there is a presumption that searches conducted without valid search warrants violate the Fourth Amendment of the Constitution of the United States. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *United States v. Mazzone*, 782 F.2d 757 (7th Cir.1986). There are a few limited exceptions to the presumption. The exception involving third-party consent is pertinent to this case. See, *Davis v. United States*, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 1261–1262, 90 L.Ed.2d 1453 (1946), *reh'g denied*, 329 U.S. 824, 67 S.Ct. 107, 91 L.Ed. 700 (1946). In addition, the issue of consent is a question of fact to be determined by the trial judge. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041,

36 L.Ed.2d 854 (1973); *United States v. Rojas*, 783 F.2d 105 (7th Cir.1986).

There are three legal bases for granting the defendant's motion. Each legal reason could be the sole basis for the decision in this case. However, the Court will address all three to ensure that the plaintiff understands the multiple reasons which prohibit any additional or collateral pursuit of his claims based on an alleged illegal search and seizure.

The doctrine of collateral estoppel is the first basis. After the plaintiff entered a guilty plea and was sentenced in criminal proceedings in a district court in the Middle District of Pennsylvania he "filed a motion under 28 U.S.C. § 2255 to vacate his sentences ... claim that his plea of guilty ... was rendered involuntary by reason of an illegal search of his property ..." Quoted from, *DeRochemont v. United States*, Criminal Nos. 83–163, 83–179, 83–180 and 83–181 (M.D.Pa. February 8, 1985), *aff'd mem.*, 772 F.2d 897 (3d Cir.1985). The plaintiff raises the same issue of illegal search and seizure in this case.

"A party may move for summary judgment on the ground ... that [an] earlier litigation actually determined an issue crucial to both actions ..." C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2735 (1973). The plaintiff argues that the doctrine of collateral estoppel is not applicable to a case resolved by entering a guilty plea. The plaintiff is correct the his guilty plea was not a decision on the merits and consequently cannot result in collateral estoppel on the illegal search and seizure issue. However, the pertinent litigation to the use of collateral estoppel in this case is the plaintiff's Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2255. The decision on the plaintiff's writ included a decision on the merits of the alleged illegal search and seizure. The Honorable Sylvia Rambo, District Judge for the Middle District of Pennsylvania, held that "[t]he petitioner's claims of illegal seizure and subsequent coercion are frivolous and totally lacking in foundation and, in any event were waived by the petitioner."

Judge Rambo's memorandum apparently concentrates on a narrow portion of the property stored, in the boxes, in the basement of Wilson's brother's store. Judge Rambo's memorandum specifically addressed the photographs of semi-clad or nude women which were among the articles stored in the boxes. Although, Judge Rambo's Order may have a broader scope than the photographs, this Court is unable to discern the extent of that order. Therefore, this Court finds that Judge Rambo's decision collaterally estops the plaintiff from raising any claims based on an illegal search or seizure of any photographs of semi-clad or nude women.

 The second basis for summary judgment is the plaintiff's expectation of privacy. Justice Harlan's concurring opinion in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), described a twofold conjunctive test for the expectation of privacy. Justice Harlan wrote:

> "My understanding of the rules that has merged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"

*Id.* at 361, 88 S.Ct. at 516.

The plaintiff proclaims his subjective expectation of privacy. However, the totality of the circumstances are not consistent with an expectation of privacy. The boxes were placed in the basement of a furniture store. The plaintiff does not allege to have had the ability or the right to control access to the premises. The owner or operator of the store could have permitted a search of the premises including the boxes in the basement without consulting the plaintiff. *See, United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974); *United States v. Bilanzich,* 771 F.2d 292, 297 (7th Cir.1985); *Marvin v. United States,* 732 F.2d 669 (8th Cir.1984); *Jones v. Berry,* 722 F.2d 443 (9th Cir.1983), *cert. denied,* 466 U.S. 971, 104

S.Ct. 2343, 80 L.Ed.2d 817 (1984); *United States v. Buettner-Janusch,* 646 F.2d 759, 764 (2d Cir.1981), *cert. denied,* 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981); *United States v. Diggs,* 544 F.2d 116, 120–122 (3d Cir.1976) (*en banc*); *United States v. Robinson,* 479 F.2d 300, 302 (7th Cir. 1973). Society does not recognize an expectation of privacy under the totality of circumstances in this case.

 Assuming, for the sake of discussion, that there is a reasonable expectation of privacy in this case, the search would not violate the Fourth Amendment of the Constitution of the United States if it was based on the consent of a third party. *Davis v. United States, supra.* The third party must have had common authority with the plaintiff or a sufficient relationship to the premises or effects to be inspected. *See, Matlock, supra,* at 171, 94 S.Ct. at 993. *Buettner-Janusch, supra,* at 764; *Marvin, supra,* at 675. The plaintiff does not dispute that the records were placed in the basement of Wilson's brother's store; that the records included Wilson's tax returns which the plaintiff prepared; that Wilson assisted in transporting and storing the boxes; and that Wilson and the plaintiff were married at all times pertinent to the issue of consent. Furthermore, the plaintiff does not allege that he had the ability or right to control access to the basement of Wilson's brother's store. The plaintiff had a collateral relationship to the premises and Wilson had a familial relationship to the premises. Wilson stated in her affidavit that the records were placed in her custody. In addition, Wilson had a relationship to the effects to be inspected because her tax returns which were prepared by the plaintiff were among the records in the boxes. Therefore, the test expressed in *Matlock* has been met, and Wilson's third party consent is valid to permit a search without a warrant. The plaintiff challenges the validity of Wilson's consent on two grounds. First, the plaintiff alleges that Wilson lacked a specific grant from the plaintiff of custody of the records. However, "[t]here is no require-

ment that express permission from [plaintiff] to [Wilson] to allow the officers to search be shown; it was sufficient to show her authority to consent in her own right, by reason of her relationship to the premises." *Matlock, supra,* 167, 94 S.Ct. at 991. Furthermore, the "authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements." *Id.; Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Bilanzich, supra,* at 297. Wilson's affidavit, the place the boxes were stored, Wilson's relationship to the place where the boxes were stored, and Judge Rambo's decision all demonstrate Wilson's authority to consent in her own right.

 The second challenge to the validity of the search is based on the alleged coercion of Wilson by the defendant's agents. This allegation is contrary to Wilson's affidavit, Agent Strunk's affidavit, and the plaintiff's own statements, on the record, in open court before Judge Rambo. Other than conclusory statements in the plaintiff's affidavit opposing the motion for summary judgment there is no evidence that Wilson was coerced in any way. Therefore, the challenge based on coercion is not supported in fact, and does not preclude summary judgment. *See, First Commodity Traders v. Heinhold Commodities,* 766 F.2d at 1011.

## CONCLUSION

The plaintiff's complaint and supplemental materials allege claims based on the First, Fourth and Fifth Amendment of the Constitution of the United States of America and the Civil Rights Act. All of these claims fail because the search and subsequent taking of the plaintiff's records, pursuant to a Grand Jury subpoena, were accomplished after proper service of the subpoena and receipt of voluntary consent from a third party who had common authority or a sufficient relationship to the premises or effects to be inspected.

The Court finds, as did Judge Rambo, that the plaintiff's claims of illegal search and seizure are patently frivolous and totally lacking in foundation. Any, further, collateral pursuit of claims based on an alleged illegal search and seizure of the plaintiff's records which were stored in the basement of Wilson's brother's store will violate Rule 11 of the Federal Rules of Civil Procedure.

According, and for all the above reasons, it is the ORDER of the Court that the defendant's, The Commissioner of the Internal Revenue Service, Motion for Summary Judgment be, and is hereby, GRANTED. It is FURTHER ORDERED that the plaintiff's, Eugene W. DeRochemont, Motion for Default Judgment be, and is hereby, DENIED as moot. It is FURTHER ORDERED that the plaintiff's, Eugene W. DeRochemont, Motion Requesting Joinder of Parties be, and is hereby, DENIED as moot. It is FURTHER ORDERED that costs be assessed to the plaintiff.