727 P.2d 949

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Ricky CLARK, Defendant-Appellant.**

**No. 9096.**

Court of Appeals of New Mexico.

Sept. 11, 1986.

Certiorari Denied Oct. 21, 1986.

Paul G. Bardacke, Atty. Gen., Alicia Mason, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

GARCIA, Judge.

Prior to trial on charges of receipt of stolen property in violation of NMSA 1978,

Section 30–16–11 (Repl.Pamp.1984), defendant sought to suppress evidence which was seized from his rented mobile home after his landlady had consented to a warrantless search. The trial court denied the motion and defendant was ultimately convicted of the crime. He takes a timely appeal. In addition to his unlawful search contention, defendant asserts a violation of NMSA 1978, Crim.P. Rule 27 (Repl.1985), as well as instances of prosecutorial misconduct and cumulative error. We affirm defendant's conviction.

## ISSUES

(1) Whether the court erred in refusing to suppress evidence obtained during the search of a mobile home after defendant's landlady consented to the search;

(2) Whether the court erred in refusing to declare a mistrial after the state cross-examined defendant about an uncharged crime, and did not disclose to defense counsel either the documentary information the state possessed about the uncharged crime or its intent to cross-examine defendant about it;

(3) Whether the prosecutor engaged in misconduct during closing argument; and

(4) Whether cumulative error was present.

Another issue in defendant's docketing statement, which was not briefed, is abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985).

## BACKGROUND

Police officers received information that stolen goods could be located inside defendant's mobile home. Without first securing a search warrant, an officer went to the trailer and found defendant's landlady already there. Rent was unpaid, an eviction notice had been posted, and the landlady was on the premises to post a second eviction notice. She had heard defendant was incarcerated in another town, and had been told by defendant's sister to remove defendant's possessions. The landlady testified that she intended to move defendant's things that day. She gave the officer permission to enter and search. Incriminating evidence was seized and subsequently admitted at defendant's trial.

## CONSENT OF OWNER

Defendant argues that the landlady's consent was invalid because a landlord cannot consent to a warrantless search of a tenant's possessions. Under the facts of this case, we disagree.

Any discussion of the validity of the landlady's consent to search defendant's possessions must first consider whether defendant had any legitimate expectation of privacy in the premises or possessions searched. *See* Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967); *State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983).

■ The fourth amendment's requirement of a legitimate expectation of privacy on the part of one who seeks to suppress evidence involves two questions: (1) has the individual by his conduct exhibited an actual (subjective) expectation of privacy; and (2) is this individual's subjective expectation one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *State v. Donaldson*.

■ In answer to the second question, an individual's expectation of privacy in his dwelling place is ordinarily afforded the most stringent fourth amendment protection. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *see also State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984) (En Banc). The fact that an individual leases or rents his dwelling place does not affect the fourth amendment's protection of a tenant's legitimate expectation of privacy; nor can the vagaries of state property law determine the parameters of that expectation. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

■ However, when an individual's actions indicate an intent to abandon his

dwelling or possessions, his conduct no longer evinces a privacy expectation and the fourth amendment will not protect him against a warrantless search. *See United States v. Robinson*, 430 F.2d 1141 (6th Cir.1970). Abandonment is an ultimate fact or conclusion based upon a combination of acts and intent. *See People v. Morrison*, 196 Colo. 319, 583 P.2d 924 (1978) (En Banc) (when defendant had left state and all clothes, bedding and personal effects were removed from apartment and all that remained was trash and defendant never claimed any items left in apartment, his actions unequivocably indicated abandonment). The intent to abandon will not be presumed and must be affirmatively shown by the party relying on abandonment. The showing must be by clear, unequivocal and decisive evidence. *United States v. Robinson; Peyton v. United States*, 275 A.2d 229 (D.C.App.1971).

In this case the state relies on a theory of abandonment to validate the officer's warrantless search, asserting that because defendant's interest in his property was terminated by his abandonment, the landlady, as owner of the mobile home, could give permission for a warrantless search. *See Commonwealth v. Jackson*, 384 Mass. 572, 428 N.E.2d 289 (1981).

We agree with the state that an individual's abandonment of his leased premises will give rise to an owner's ability to consent to a search of those premises. Upon a review of the whole record, we find support for a finding of intentional abandonment in this case. *Id.*

The evidence offered in support of abandonment includes: the fact that the landlady had heard that defendant was in jail; that defendant was behind in his rent; that the landlady had previously placed an eviction notice on defendant's trailer which was "missing" on the day of the search; that the landlady, because of nonpayment, intended to enter the trailer and move defendant's things out that day; and that the landlady had made arrangements with defendant's sister to remove defendant's possessions.

The state admits that mere nonpayment of rent is not, in itself, evidence of abandonment. *State v. Hodges*, 287 N.W.2d 413 (Minn.1979). In addition, the landlady's actions in posting eviction notices is not dispositive. The actual rights and liabilities of defendant under New Mexico property law do not control his ability to assert his fourth amendment right to privacy. *See State v. Johnson*, 108 Idaho 619, 701 P.2d 239 (Ct.App.1985).

The fact of defendant's incarceration is, similarly, not a factor indicating an intent to abandon. To the contrary, defendant's incarceration is the type of involuntary absence which triggers the imposition of "an especially heavy burden" on the government to show abandonment. *United States v. Robinson.* In *Robinson*, a case quite factually similar to this one, defendant was incarcerated at the time of the search. He had been absent from his apartment for over a month without paying any rent. A friend of defendant's wife (defendant was not living with his wife) had accompanied the wife to defendant's apartment and removed some of defendant's belongings sometime before the search. In overruling the trial court's finding of abandonment, the Sixth Circuit Court noted that the act of removing defendant's belongings and the building manager's belief that defendant had abandoned the apartment could not be considered as evidence of defendant's intent to abandon the apartment. *Cf. Baggett v. State*, 254 Ark. 553, 494 S.W.2d 717 (1973) (abandonment found where although the rent had been paid on the day the search was conducted, accused had quit his job, told several people he was going to another city, turned his key over to owner and taken all his personal belongings with him).

There was, however, testimony from which the court could determine that defendant intended to abandon the trailer. The landlady testified regarding her contacts with defendant's sister, and about a conversation concerning the removal and storage of defendant's belongings. The landlady told the sister she could not store

**14**

defendant's possessions, but would move them "outside."

██ In viewing the landlady's testimony in a light most favorable to the court's findings, there is a fair inference that defendant communicated to his sister his desire that she arrange for the removal of his possessions. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). This evidence, when coupled with the nonpayment of rent and the landlady's previous postings of an eviction notice, is substantial evidence which supports the court's finding of abandonment. *Cf. People v. Brewer*, 690 P.2d 860 (Colo.1984).

From the facts before us, we conclude that the state met its heavy burden of showing abandonment by substantial evidence. Our inquiry need not, however, end here. While we believe that the validity of the landlady's consent to enter the premises can be predicated upon defendant's abandonment of the trailer, we can also affirm the trial court's admission of the evidence seized therein on another ground.

██ Warrantless searches are valid if performed after valid consent is given by someone who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. *See State v. Larson*, 94 N.M. 795, 617 P.2d 1310 (1980); *Ex parte Hilley*, 484 So.2d 485 (Ala.1985) (one who subjects his property to the exclusive or joint control of another assumes risk that consent will be granted by other to search of property); *State v. Carter*, 485 So.2d 260 (La.App. 3 Cir.1986).

There is a fair inference from the evidence before the court that defendant had arranged, through his sister, for the landlady to store his belongings. Once defendant allowed the landlady this "common authority" over his possessions he took the chance that she might consent to a search. *See State v. Barry*, 94 N.M. 788, 617 P.2d 873 (Ct.App.1980). In *Barry*, we said:

> [W]hen one chooses to dilute his exclusive possession of any part of the premises by granting access to another, he loses the expectation of privacy he would otherwise enjoy, because he then subjects his privacy to the comings and goings of another, and to anyone else who might accompany his co-possessor or pass within viewing range of the exposed area.

*Id.* at 791, 617 P.2d at 876.

██ Defendant, by virtue of the arrangements made with his landlady, empowered the landlady to consent to a search of his trailer. *See State v. Larson; DeRochemont v. Commissioner-Internal Revenue Service*, 628 F.Supp. 957 (N.D. Ind.1986). We affirm the trial court's denial of defendant's motion to suppress.

## CROSS–EXAMINATION

Prior to trial on the stolen property charge, defendant had been arrested and charged with forgery. After a hearing on defendant's motion in limine, in part directed to the prior forgery conviction, the trial court determined that the state could cross-examine defendant regarding the fact of conviction, pursuant to NMSA 1978, Evid. Rule 609 (Repl.Pamp.1983), should defendant testify.

During defendant's direct examination, defense counsel elicited the fact of the forgery conviction. The court gave a limiting instruction to the jury directing it to consider the conviction for credibility purposes only.

On cross-examination, the prosecutor questioned defendant about defendant's use of a driver's license he had altered to carry out the forgeries. After establishing that defendant had possession of Kurt Pfeiffer's license, the following exchange took place:

Q: What else did you do to Mr. Pfeiffer's driver's license, Mr. Clark?

A: Uh, that's it.

Q: No, you put somebody else's picture on it, didn't you?

A: Yes.

Q: Whose picture did you put on it?

A: I put my picture on it.

Q: And why did you do that, Mr. Clark?

At that point defense counsel interposed an immediate request to approach the bench. Counsel made several objections, one of which, that the prosecutor was improperly trying to elicit a claim of privilege in front of the jury, the trial judge sustained.

At the close of the evidence, defense counsel moved for a mistrial because of the asserted improper cross-examination and because of the prosecutor's failure to disclose the information about the altered license to defendant. The court denied the mistrial motion.

On appeal, defendant contends that the cross-examination was improper without reference to any discovery violations and that his motion for mistrial should have been granted because of the prosecutor's intentional failure to disclose the investigatory report.

■ The cross-examination was proper. While it is true that the underlying circumstances of a prior conviction should not ordinarily be inquired into, *see State v. Ocanas*, 61 N.M. 484, 303 P.2d 390 (1956), our cases recognize that evidence may be inadmissible for some purposes, yet admissible for others. *State v. Wyman*, 96 N.M. 558, 632 P.2d 1196 (Ct.App.1981). Notwithstanding that the facts surrounding the altered license would be inadmissible as an underlying circumstance of a prior conviction, those same facts are admissible under NMSA 1978, Evid.Rule 608(b) (Repl.Pamp. 1983), as a specific instance of conduct which is probative of truthfulness. Defendant admits this.

■ Defendant contends that the prosecutor's manner of cross-examining defendant was error because it did not allow the trial court a prior opportunity to determine the self-incrimination issue. Nothing in Evid.Rule 608 requires the prosecutor to announce to the court its intention to use evidence so that the trial court may make a prior determination of whether the use of the evidence would violate any self-incrimination rights. In this case, the prosecutor asked several questions concerning the al-

tered license before defendant objected. Once defendant objected, the trial court sustained the objection on self-incrimination grounds and no further questions were asked on this topic. The trial court acted properly in sustaining the objection when it was made. Defendant has a duty to object at the earliest possible time. *State v. Fish.* We will not entertain the issue of the prosecutor's questions which were asked before the objection. *Id.*

## RULE 27 VIOLATION

The prosecutor's information about the license alteration was obtained from an investigatory report of defendant's prior forgery arrest. This investigatory report, prepared by the Clovis Police Department, had been attached to the judgment and sentence of the prior conviction. The judgment and sentence were disclosed to defense counsel without the investigatory report.

Defendant maintains that his statements about the altered license should have been disclosed under both Sections (a)(1) and (a)(3) of Crim.P.Rule 27.

Criminal P. Rule 27(a)(1) provides for the disclosure of:

(1) * * * Any statement made by the defendant, or co-defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney[.]

Criminal P. Rule 27(a)(3) provides for the disclosure of:

(3) * * * Any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence at the trial, or were obtained from or belong to the defendant[.]

The state maintains that because the prosecutor intended to use the information to impeach defendant's credibility, the re-

port is somehow not a statement or document required to be disclosed by the rule.

■ Evidence which the state intends to use at trial must be disclosed. *State v. Perrin,* 93 N.M. 73, 596 P.2d 516 (1979). The state must also disclose items which are material to the preparation of the defense. *Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App.1975).

The state fastens on the requirement of Crim.P. Rule 27(a)(3) that documents "material to the preparation of the defense" be disclosed, and chooses not to discuss the section's further requirement of disclosure of "evidence" intended for use by the state at trial. As to the assertion that the report was not material to the defense, the state offers no authority for the proposition that information that would certainly impact a defense counsel's tactical trial decisions is not material to the defense. Receipt of the report would clearly affect counsel's decisions on further suppression motions; on whether defendant should testify; on the preparation of defendant for cross-examination; and on the extent of information elicited by defense counsel on direct.

Our cases have held that the duty of a prosecutor is to see that defendant has a fair trial. *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979). In *State v. Manus,* defendant claimed error as a result of the surprise testimony of a rebuttal witness who had not been on the state's disclosed witness list. After objecting, the trial court postponed testimony until the next day to allow defendant time to depose the witness but denied defendant's request for a continuance to further investigate. On appeal, the New Mexico Supreme Court concluded that defendant was not prejudiced by the failure to disclose because of the opportunity to depose. Thus, the court did not specifically decide whether rebuttal witnesses were subject to disclosure. The court criticized, however, as we do today, the "gamesmanship" inherent in this type of litigation tactic. "A criminal trial, like its civil counterpart, is a quest for truth." *Gregory v. United States,* 125 U.S.App. D.C. 140, 143, 369 F.2d 185, 187 (1966),

*cert. denied,* 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). The process is far too important and the goal too dear to allow this kind of trial maneuvering.

■ We do not, however, find that defendant has shown prejudice under the standard enunciated in *State v. Sandoval,* 99 N.M. 173, 655 P.2d 1017 (1982): "The prejudice part of the test [to obtain reversal for a Rule 27 violation] requires the court to assess whether the omitted evidence created a reasonable doubt which did not otherwise exist." *Id.* at 175, 655 P.2d at 1019. In this case, the omitted evidence creates no doubt.

Thus, we do not specifically decide whether the investigating report was the type of document or statement of defendant which should properly have been admitted under Crim.P. Rule 27. The trial court's denial of the mistrial is affirmed.

## CLOSING ARGUMENT AND CUMULATIVE ERROR

We address these issues together because, having found no reversible error in the first two issues, the only alleged errors to which the doctrine of cumulative error would be applicable are those found in closing argument. Moreover, contentions relating to prosecutorial misconduct during closing argument are frequently reviewed for the cumulative impact of the prosecutor's remarks. *See State v. Diaz,* 100 N.M. 210, 668 P.2d 326 (Ct.App.1983).

Defendant complains of three comments. First, the prosecutor told the jury that defense counsel did not like his own witnesses and the prosecutor did not like them either. Next, the prosecutor suggested that defense counsel's dissatisfaction with the investigation of this case was without basis because the police had more experience in investigation than defense counsel. Finally, the prosecutor told the jury that they would have every right to kick him out of the courtroom if he gave them a case like the defense did. Objection was made to each of these comments; the objections were sustained and the court ad-

monished the jury as to the last two comments.

We do not believe that the comments rise to the level of depriving defendant of a fair trial. *See State v. White*, 101 N.M. 310, 681 P.2d 736 (Ct.App.1984). This is not a case like *State v. Henderson*, 100 N.M. 519, 673 P.2d 144 (Ct.App.1983), in which the prosecutor told a highly prejudicial and supposedly true story that had no basis whatsoever in the evidence, or *State v. Diaz*, in which the prosecutor repeatedly cast aspersions on defendant, the defense case, and defense counsel, none of which had any basis in the evidence. In this case, if there was error, it was cured by the sustaining of objections and the admonitions. *See State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969); *Henderson*.

The conviction and sentence are affirmed.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.