This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: _____

**NO. 30,847**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.

**GABRIEL GEORGE QUINTANA**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Timothy L. Garcia, District Judge**

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General

Nicole Beder, Assistant Attorney General

Santa Fe, NM

for Appellee

## DECISION

**BOSSON, Justice.**

**BACKGROUND**

{1} Gabriel (Defendant) and Marisela Quintana were married in 2003. In June 2005, Marisela left Defendant and moved in with her parents two miles away. In August of that year, Marisela obtained an order of protection barring Defendant from any contact with her or the couple's children. Defendant violated the order by physically confronting Marisela at her place of work, and, on September 4, by going to her parents' home in an attempt to remove the children.

{2} On the morning of September 5, 2005, Marisela left for work in her two-door Chevrolet Cavalier, accompanied by her mother Elisa Apodaca. As they approached the main highway, Defendant emerged from the bushes and stood in front of the car wearing black pants and a black jacket. He was angry and said he wanted to get back together with Marisela. Elisa told Defendant that Marisela did not want to be involved with him any longer. Marisela asked Defendant to move, but he persisted, ultimately opening the car door, entering the rear of the car, and attacking Marisela.

He stabbed her in the leg, arms, back, breast and face.  The wounds were not life threatening.

{3}     When Defendant finally relented, Marisela locked the doors and started to drive to the highway to look for help.  However, she noticed that Elisa was no longer in the vehicle, and as she drove away, Marisela observed Defendant in the driveway with his hand raised above Elisa.  Marisela arrived at the home of her neighbors, who helped contact the police and paramedics.

{4}     Elisa died at the scene, sustaining at least nine stab wounds, several of which penetrated deep within vital areas of her body cavity.  She also suffered several defensive wounds.  She died as a result of blood loss from a combination of the wounds, the most severe of which severed her aorta.

{5}     Approximately twelve hours after the attack, police received a tip from Defendant's brother, Carlos Heredia, stating that Defendant was at their parents' house changing clothes.  Defendant was apprehended in the vicinity shortly thereafter wearing a blue T-shirt, dark sweat pants, and boots. His clothes were wet from the waist down, and appeared soiled and littered with stickers.  There was no blood on Defendant's clothing at the time of his arrest.  Whether these were the same clothes he wore at the time of the attack is a matter of some dispute, though the

3

fact is not dispositive.

{6}    The police investigation revealed two additional sets of facts relevant to our consideration regarding Defendant's conduct between the time of the attack and his apprehension.  First, another of Defendant's brothers, Librado Heredia, told investigators that Defendant had contacted him, admitting that he had stabbed Marisela and Elisa, and requesting money to go to San Diego.  State Police Officer Lorenzo Aguirre testified at trial that Librado had reported the same to him when he arrived at the home of Defendants' parents on the morning of September 5.

{7}    Second, at about 7:00 a.m. on the day of the attack, a janitorial worker observed an occupied white Ford truck near the restrooms in a no-camping area at Abiquiu Dam.  He observed the same truck in the same location the following day, and reported the vehicle to Ranger Phil Martinez.  On Wednesday, two days after the attack, Ranger Martinez inspected the vehicle and discovered a receipt and a torn photograph of Defendant's family in a garbage bag in the bed of the truck. Ranger Martinez then contacted law enforcement, which later verified that the truck was registered to Defendant.  They then obtained a warrant and searched the truck, finding nothing of significant evidentiary value.

{8}    Defendant was convicted by a jury in the First Judicial District Court of the

4

following criminal offenses: murder in the first degree of Elisa Apodaca; attempted murder in the second degree of Marisela Quintana; aggravated battery against a household member, Marisela Quintana; tampering with evidence; and violation of an order of protection. He was sentenced to life imprisonment for first-degree murder, three years consecutive for attempted second-degree murder, three years consecutive for tampering with evidence, three years concurrent for aggravated battery, and 364 days concurrent for violating the order of protection. Defendant comes before this Court on direct appeal, pursuant to Rule 12-102(A)(1) NMRA.

## DISCUSSION

**Defendant's conviction for aggravated battery violates the Double Jeopardy Clause because it is a lesser included offense of the felony murder conviction.**

{9}     Defendant was convicted of first-degree murder on a general jury verdict which did not indicate the theory of murder—deliberate or felony—upon which the jury relied. *See* NMSA 1978, § 30-2-1(A)(1) & (2) (1994). He was also convicted of the predicate to the felony murder: aggravated battery against a household member. NMSA 1978, § 30-3-16(C) (1995). Defendant argues that conviction for both offenses violates the double jeopardy provisions of both the United States Constitution and the New Mexico Constitution. The parties agree that the underlying felony of aggravated battery against a household member must be

5

vacated. While we are not bound to accept the State's concession, *see State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140, we agree that the aggravated battery conviction should be vacated. Whether constitutional protections under the Double Jeopardy Clause have been violated is a question of law which we review de novo. *State v. Saiz*, 2008-NMSC-048, ¶ 22, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783.

{10} We have held that general jury verdict forms allowing for conviction for deliberate or felony murder are permissible, where the jury is not able to agree on a single theory, provided the defendant is not ultimately convicted for both offenses. *See Griffin v. United States*, 502 U.S. 46, 49-51 (1992); *State v. Salazar*, 1997-NMSC-044, ¶ 32, 123 N.M. 778, 945 P.2d 996. However, we have also made clear that where conviction relies on a general jury verdict of this kind, the defendant cannot also be convicted of the predicate felony to the felony murder charge without compromising double jeopardy protections. *See State v. Gonzales*, 2007-NMSC-059, ¶¶ 6-10, 143 N.M. 25, 172 P.3d 162; *see also Foster*, 1999-NMSC-007, ¶ 28 ("[W]e must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in

6

double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative.).

{11} It is also clear that the Legislature did not intend felony murder and the predicate felony to constitute separately punishable offenses. We discussed this issue in *State v. Contreras*, 120 N.M. 486, 490-91, 903 P.2d 228, 232-33 (1995), consistent with the United States Supreme Court's analysis in *Whalen v. United States*, 445 U.S. 684, 694 (1980), and resolved the issue unequivocally in *State v. Frazier*, 2007-NMSC-032, ¶ 26, 142 N.M. 120, 164 P.3d 1 ("When the State is permitted to elevate what would otherwise be a second-degree murder to first-degree murder, with the attendant increase in punishment, based on the fact that the killing happened during the commission of a felony, the felony should be subsumed by the first-degree murder.").

{12} Assuming, as we must, that the jury convicted on a felony murder theory, the present case is controlled by the same rationale as *Foster*, *Contreras*, and *Frazier*. As in those cases, Defendant was convicted of both felony murder and the predicate felony—here, aggravated battery against a household member. Because Elisa's murder occurred during the commission of the aggravated battery against Marisela, the underlying conduct was subsumed within the felony murder charge. As we

7

explained in *Frazier*, our Legislature did not intend the paradoxical outcome of imposing a greater sentence on a defendant convicted of felony murder than on a defendant convicted of first-degree premeditated murder, where the very basis for the elevated felony murder punishment is the commission of the predicate felony. 2007-NMSC-032, ¶¶ 9-10. The practical effect of affirming the trial court's sentencing on both charges would be to twice punish Defendant for the same offense, in direct contravention of the United States and New Mexico Constitutions. We therefore reverse Defendant's conviction for aggravated battery against a household member.

**Defendant's conviction for tampering with evidence was supported by sufficient evidence.**

{13}    Defendant challenges the sufficiency of the evidence supporting his tampering with evidence conviction. Our standard of review is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). In making our determination, we view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128

8

N.M. 711, 998 P.2d 176.

{14}     The crime of tampering with evidence consists of "destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (2003). Thus, a tampering with evidence conviction requires proof of two elements: "(1) the specific intent of [the d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively destroyed or hid physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (internal quotation marks omitted). Moreover, "[w]hen there is no other evidence of the specific intent of the defendant to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *Id.* With respect to each element of the statute, we conclude that the jury's verdict was supported by sufficient evidence.

{15}     *Duran* is similar to this case in several respects. It involved a tampering conviction for destroying or hiding a knife and bloody clothing in connection with a stabbing murder. And, like the present case, no bloody clothes or knife were ever found. In *Duran*, we rejected the inference that a knife and bloody clothes *must have* existed, and that since no knife or clothes were found, they *must have been*

9

destroyed or hidden. 2006-NMSC-035, ¶ 15. We held that, while both the overt act and the intent can be inferred, some direct or circumstantial evidence is required. *Id.* There must be more than the naked absence of the evidence in question. We also clarified the nature of such additional evidence necessary to draw a permissible inference:

> Statements by defendants and witnesses regarding the disposition of evidence may allow a jury to reasonably infer an overt act and intent, as may many other kinds of circumstantial evidence that would tend to prove a defendant acted to tamper with evidence and in so acting intended to thwart a police investigation.

*Id.* ¶ 16.

{16} Important distinctions between the present case and *Duran* guide us to a different outcome in favor of the State. Most importantly, in this case there are "statements by witnesses . . . regarding the disposition of evidence," specifically Defendant's brother, Carlos, who told police that Defendant was going to their parents' home *to change clothes*. Also, Defendant's clothes were wet at the time of his arrest, which a reasonable juror might interpret as evidence that he attempted to wash away blood stains. Additionally, according to eyewitness testimony, Defendant was wearing a black jacket inside-out at the time of the attack, but he was arrested wearing a *blue* T-shirt. A reasonable juror could infer from this evidence

that Defendant changed clothes, and even that he wore the jacket inside-out with the intent to later conceal evidence of the attack. While these are certainly not the only inferences that a reasonable juror could draw from the evidence, they are permissible inferences, and sufficient to support a conviction for tampering. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts.").

{17} Defendant argues that Carlos's statements were inadmissible hearsay in violation of Rules 11-801 and 11-802 NMRA; and un-confronted testimony, in violation of the Sixth Amendment to the United States Constitution as interpreted in *Davis v. Washington*, 547 U.S. 813 (2006). Defendant did not preserve these challenges below, and now argues that admission of the evidence constituted plain error. We disagree, but further discussion is not warranted because Carlos's statements were not, as Defendant asserts, the "only" evidence that Defendant changed his clothes. Other evidence, including eyewitness testimony regarding his clothing at the time of the attack, would be sufficient even without Carlos's statement to the police.

{18} In contrast to the permissible inference of tampering that can be drawn from

11

evidence regarding Defendant's clothes, the same inference is not permissible with regard to the knife used in the attack. As in *Duran*, the weapon used to attack Marisela and Elisa was never found. Eyewitness testimony proved that the knife existed, but this alone does not provide a meaningful distinction with *Duran*, where there was little doubt that a killing instrument *existed*. What was missing in *Duran*, and what is missing here, is direct or circumstantial evidence that Defendant actively hid, destroyed or otherwise tampered with the knife. *See Duran*, 2006-NMSC-035, ¶ 15. Unlike evidence of changing or washing clothing, nothing in the record provides a reasonable juror with a basis upon which to infer both an overt act of tampering with the knife and the requisite intent to tamper. *Id.* The knife simply has not been found, which puts this aspect of the case squarely in line with our opinion in *Duran*.

{19} However, since the jury instruction required a finding that "the defendant changed or hid his clothing *and/or* knife," we assume that the jury based its verdict on the option supported by sufficient evidence—the clothing. *See Griffin*, 502 U.S. at 59; *see also State v. Olguin*, 120 N.M. 740, 741, 906 P.2d 731, 732 (1995) ("[D]ue process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction."). Accordingly, the

tampering conviction is supported by sufficient evidence, and we reject Defendant's challenge on this ground.

{20} Although we conclude that the State's evidence in this case was sufficient to support a conviction for tampering, we note an inconsistency between the statute and the jury instructions that creates a potential for juror confusion. The jury instructions that were given in this case accurately follow the Uniform Jury Instructions for tampering with evidence:

1. The defendant changed or hid his clothing and/or knife;
2. The defendant intended to prevent the apprehension, prosecution, or conviction of himself;
3. That this happened in New Mexico on or about September 5, 2005.

*See* UJI 14-2241 NMRA. In the statute, the *mens rea* explicitly modifies the *actus reus*: "destroying, changing, hiding . . . **with intent to** prevent the apprehension, prosecution or conviction of [the defendant]." Section 30-22-5 (emphasis added). However, in the jury instruction, the intent requirement stands alone, lending itself, incorrectly, to a potential interpretation that *any* evidence that the defendant intended to prevent his own apprehension would satisfy the *mens rea* requirement of the statute. The distinction is subtle but crucial, because our case law allows intent to tamper to be inferred from an overt act. *See Duran*, 2006-NMSC-035, ¶ 14. *Duran* was careful to clarify, however, that the "overt act" from which intent could be

13

inferred must be an act of tampering; that is, "an overt act *to destroy or hide* [evidence]." *Id.* ¶ 13.

{21}     The trial court properly denied Defendant's motion to dismiss the tampering charge, consistently relying, as we have here, on evidence pertaining to clothing to support a conviction.  However, on appeal the State focuses on evidence of flight as circumstantial evidence of tampering, arguing that "[h]ere, . . . the evidence made plain that [D]efendant sought to flee the jurisdiction, . . ., and there can thus be no doubt that his conduct satisfied the intent to prevent the apprehension, prosecution, or conviction of himself . . . ." (Internal quotation marks omitted.)  Evidence of flight, when considered with evidence of changed or wet clothing, is at least *consistent* with an intent to tamper with evidence.  A reasonable juror might assume that an assailant on the run would elect to change his clothes before departing. However, while an intent to flee is *consistent with*, it is not *independently probative of*, an intent to tamper.  Since the jury instructions do not insist upon the distinction, a juror might look to the plain language and mistakenly assume, as the State has in its brief, that evidence of flight alone satisfies the intent element of the tampering statute.  Instead, the State must prove intent first by evidence of tampering without resort to secondary evidence like flight.  The point is not dispositive here because

14

of sufficient additional evidence. Nonetheless, we submit the matter for consideration by the Uniform Jury Instructions for Criminal Cases Committee in light of the potential for future error.

{22} Finally, while we commend and encourage vigorous representation in advocacy, we remind the State of the need to represent the facts accurately to this Court. *See* Rule 16-303(A)(1) NMRA. In three separate instances, the State's brief makes reference to a murder weapon in the abandoned truck: "While on the run, [D]efendant left the murder weapon in his truck, which he abandoned at Abiquiu Dam."; "[D]efendant sought to flee the jurisdiction, after abandoning his truck with the knife in it."; and "And this, in combination with [D]efendant's leaving the knife he used in the attack in the truck he abandoned . . . ." The State's citations to the record do not support these statements. What was found in the truck was a utility knife, and nothing we have been alerted to in the record suggests that this utility knife was the murder weapon. Indeed, the murder weapon was much bigger. Part of the State's case at trial relied on Marisela's testimony that Defendant stabbed her with a knife she had given him, which was not the utility knife. The State also put on forensic evidence of knife wounds on Elisa that exceeded nine inches in depth, far larger than a utility knife. Simply put, the State's effort to tie the murder weapon

15

to the utility knife found in the abandoned truck finds absolutely no support in the record.

## DEFENDANT'S REMAINING ARGUMENTS LACK MERIT

**The trial court properly denied Defendant's motion to suppress evidence acquired during Ranger Martinez' warrantless search of his truck.**

{23}     Defendant argues that the trial court erred in denying a motion to suppress evidence found in a garbage bag in the back of Defendant's truck.  He claims that since Ranger Martinez is a government agent, his failure to obtain a search warrant prior to opening the garbage bag violated Defendant's rights under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.  In reviewing a trial court's ruling on a motion to suppress evidence, findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo.  *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19.

{24}     In order to successfully challenge a search under the United States and New Mexico Constitutions, a defendant must demonstrate that he had an actual, subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable.  *See Katz v. United States*, 389 U.S. 347, 361 (1967); *State v. Ryan*, 2006-NMCA-044, ¶ 19, 139 N.M. 354, 132 P.3d 1040.  Unlike the United

16

States Constitution, the New Mexico Constitution has been interpreted to recognize a legitimate expectation of privacy in one's garbage, where that garbage has been concealed from plain view. *See State v. Granville*, 2006-NMCA-098, ¶ 24, 140 N.M. 345, 142 P.3d 933. However, "one can relinquish this expectation if he or she abandons the property." *State v. Celusniak*, 2004-NMCA-070, ¶ 25, 135 N.M. 728, 93 P.3d 10. "'Abandonment is an ultimate fact or conclusion based upon a combination of acts and intent,'" *id.* ¶ 26 (quoting *State v. Clark*, 105 N.M. 10, 13, 727 P.2d 949, 952), and "[i]ntent 'may be inferred from words spoken, acts done, and other objective facts,'" *State v. Guebara*, 119 N.M. 662, 665, 894 P.2d 1018, 1021 (Ct. App. 1995) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)). The party seeking to prove abandonment must show this intent by "'clear, unequivocal and decisive evidence.'" *Celusniak*, 2004-NMCA-070, ¶ 26 (quoting *Clark,* 105 N.M. at 13, 727 P.2d at 952).

{25}     For constitutional purposes, Ranger Martinez was acting as a government agent when he opened the garbage bag in the back of Defendant's truck. The garbage bag was closed and within the bed of Defendant's truck, suggesting that Defendant intended to conceal the contents from plain view. However, substantial evidence indicated that Defendant had abandoned his truck, forfeiting any legitimate

17

expectation of privacy he may have had in the garbage bag. The truck was left in a public parking lot where overnight parking was prohibited. Defendant was later apprehended on foot with the apparent goal of fleeing the jurisdiction, suggesting that he intended to abandon the truck when he parked at Abiquiu Dam. In *State v. Esguerra*, 113 N.M. 310, 314, 825 P.2d 243, 247 (Ct. App. 1991), we found abandonment where the defendant had discarded a knapsack in a public parking lot in the course of flight from prosecution. In that case, the item was recovered almost immediately, whereas here the truck remained untouched for two days before Ranger Martinez opened the garbage bag.

{26}    When viewed in the light most favorable to the trial court's ruling, substantial evidence supported a conclusion that the truck had been abandoned. As such, Defendant had no legitimate expectation of privacy in the truck or its contents, and thus, he has no standing to assert a violation of his constitutional right to be free from unreasonable search. We need not reach the question of whether an unconstitutional search would warrant a new trial. However, we note that even if the search of the garbage bag were unconstitutional, admission of the two items of evidence that were recovered—a receipt and a torn family photo—would have been harmless error. *See State v. Downey*, 2008-NMSC-061, ¶ 39, 145 N.M. 232, 195

18

P.3d 1244 ("[E]rror in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (Quoting *State v. Fairweather*, 116 N.M. 456, 461, 863 P.2d 1077, 1082 (1993).)).

{27}   Finally, Defendant argues that the police did not have jurisdiction to execute a search warrant upon the truck because the truck sat on federal property. However, in the absence of any factual record suggesting a federal assertion of exclusive law enforcement jurisdiction over Abiquiu Dam, we indulge in the presumption that the police acted with lawful authority when they seized the truck. *See State ex rel. Children, Youth & Families Dep't v. Debbie F.*, 120 N.M. 665, 667, 905 P.2d 205, 207 (Ct. App. 1995) ("[T]he 'exclusive jurisdiction' provided for in the United States Constitution, art. I, § 8, cl. 17, is not an absolute prohibition against the application of state laws. Rather, its purpose is to protect the federal government against conflicting regulations."). Furthermore, since the evidence recovered from the truck was insignificant to the ultimate convictions, any error in admitting such evidence would have been harmless. *Fairweather*, 116 N.M. at 461, 863 P.2d at 1082.

**Evidence was sufficient to support the convictions for aggravated battery against a household member, attempted second-degree murder, first-degree**

**murder, and violation of an order of protection.**

{28}  Defendant challenges his convictions for aggravated battery against a household member, attempted second-degree murder, first-degree murder and violation of a protective order, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985).  He asserts that the evidence produced at trial was insufficient to support a guilty verdict on those charges.

{29}  The jury was properly charged with the elements of each offense.  *See* § 30-3-16(A)&(C) (aggravated battery against a household member); § 30-28-1 (attempt to commit a felony); § 30-2-1(B) (murder in the second degree); § 30-2-1 (A)(1)&(2) (murder in the first degree); § 40-13-6 (family violence protection order).  After reviewing Defendant's limited argument on this point, we are satisfied that the evidence, as summarized herein, was more than sufficient to support each of the convictions.  We affirm the convictions for first-degree murder, attempted second-degree murder and violation of a protective order.  As discussed earlier, the aggravated battery against a household member conviction is reversed on double jeopardy grounds.

**The trial court did not err in denying the motion to dismiss the indictment.**

{30}     Defendant's next claim is also asserted pursuant to *Franklin*, 78 N.M. 127, 428 P.2d 982  and *Boyer*, 103 N.M. 655, 712 P.2d 1.  He argues that the indictment against him should have been dismissed because of the errors alleged in his pre-trial motion to dismiss the indictment.  That motion alleged procedural errors involving proof of the number of grand jurors finding probable cause, the secrecy of the proceedings, the testimony of the prosecutor, and the use of an interpreter.  The motion also alleged substantive errors involving competence of the evidence and the nature of the charges.  We reject Defendant's claim on both procedural and substantive grounds.

{31}     In a recent opinion, we outlined the procedure a defendant must follow to challenge a grand jury indictment.  In *Jones v. Murdoch*, 2009-NMSC-002, ¶¶ 33-41, 145 N.M. 473, 200 P.3d 523, we established a pre-indictment procedure by which a defendant can ensure that exculpatory evidence comes before the grand jury. Our concern in that case was "the very real damage that an ill-advised indictment may inflict on a target's reputation even if the indictment is later dismissed or if the accused is innocent." *Id.* ¶ 2.  For all other post-indictment challenges, we reiterated the statutory requirement that "a target-turned-defendant must establish bad faith on the part of the prosecutor as a prerequisite to obtaining a dismissal of the

21

indictment." *Id.* ¶ 19; *see* NMSA 1978, § 31-6-11(A) (2003).

{32}     The record does not reveal the trial court's ruling on Defendant's post-indictment challenge, but the point is irrelevant because the motion was filed, without waiver from the court, well beyond 90 days after his arraignment. *See* Rule 5-601(D) NMRA (pretrial motions of this nature must be filed within 90 days of the arraignment absent a waiver of the time requirements by the court upon a showing of good cause); *see also State v. Vallejos*, 1998-NMCA-151, ¶ 126 N.M. 161, 164, 967 P.2d 836, 839 (Ct. App. 1998) ("[W]e agree with the trial court that the motion [challenging indictment] was untimely, and we affirm on this basis.").

{33}     Defendant also failed to establish, either in his initial motion or his appeal to this Court, bad faith on behalf of the prosecuting attorney during the grand jury proceedings. As we held in *State v. Gallegos*, 2009 -NMSC- 017, ¶ 11, 146 N.M. 88, 206 P.3d 993, "'[i]n the absence of prosecutorial bad faith, there is no clear statutory authority for judicial review, . . . [and] in the absence of clear statutory authority for judicial review, . . . the grand jury's determination of probable cause is conclusive." *Id.* ¶ 11 (quoting *State v. Romero*, 2006-NMCA-105, ¶ 8, 140 N.M. 281, 142 P.3d 362). Finally, any challenge to an indictment implicitly assumes that, absent the challenged event or conduct, there would not have been a finding of

22

probable cause to warrant further prosecution. After a trial on the merits, however, "'any question of probable cause is necessarily obviated' by the jury's finding of guilt." *Gallegos*, 2009-NMSC-017, ¶ 19 (quoting *State v. Ulibarri*, 2000-NMSC-007, ¶ 2, 128 N.M. 686, 997 P.2d 818). Similarly, any error with regard to the charges has since been cured by proper jury instruction and by our treatment of the convictions in this Decision. By affirming Defendant's convictions, we have affirmed the jury's findings not only of probable cause, but of guilt beyond a reasonable doubt. *See Ulibarri*, 2000-NMSC-007, ¶ 2.

**The trial court did not err in ruling on pre-trial discovery requests.**

{34}     Defendant's remaining argument is that the trial court erred in failing to make additional members of the victims' family available for interviews. We review challenges to a trial judge's discovery rulings under an abuse of discretion standard, and then only when the issue has been properly preserved. *State v. Desnoyers*, 2002-NMSC-031, ¶ 132 N.M. 756, 768, 55 P.3d 968, 980 (2002) ("The granting or denial of discovery in a criminal case 'is a matter peculiarly within the discretion of the trial court' which we review under an abuse of discretion standard." (Quoting *State v. Bobin*, 103 N.M. 375, 377, 707 P.2d 1185, 1187 (Ct. App. 1985).)); *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 455, 993 P.2d 1280 ("In order to preserve

23

an error for appeal, 'it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked.'" (Quoting *State v. Lopez*, 84 N.M. 805, 809, 508 P.2d 1292, 1296 (1973).)). Defendant failed to preserve this argument below and cites no authority other than *Franklin* and *Boyer* for the proposition that the trial court abused its discretion. We therefore conclude that this argument lacks merit.

**CONCLUSION**

{35} We reverse Defendant's conviction for aggravated battery against a household member, we affirm the remaining convictions and remand to the district court for entry of an amended judgment and sentence consistent with this Decision.

{36} **IT IS SO ORDERED**.

_____

**RICHARD C. BOSSON, Justice**

24

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**