489 P.2d 178

STATE of New Mexico, Plaintiff-Appellee,

v.

Curtis Franklin FLOWERS, Defendant-Appellant.

No. 9234.

Supreme Court of New Mexico.

Sept. 27, 1971.

Ray Hughes, Rose-Marie Gruenwald, Deming, for appellant.

David L. Norvell, Atty. Gen., Ray H. Shollenbarger, Jr., Sp. Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Justice.

Defendant was charged and convicted of murder in the first degree, contrary to the provisions of § 40A–2–1, N.M.S.A.1953 (Repl.Vol. 6, 1964), and of unlawfully taking a motor vehicle, contrary to the provi-

sions of § 64–9–4(a), N.M.S.A.1953 (Repl. Vol. 9, pt. 2, 1960). We affirm.

Briefly the facts pertinent to the questions raised on this appeal are: (1) defendant, a woman friend and a young man friend decided to spend some time in the mountains north of Deming, New Mexico; (2) there are some differences in the testimony as to defendant's reasons for this decision, but there is evidence he was attempting to evade the command of a subpoena to appear as a witness in a pending criminal case; (3) they took with them some food, bedding and a .22 caliber rifle which defendant had borrowed; (4) they had no means of transportation, so defendant, accompanied by the young man, who was called Butch, secured the use for approximately an hour of a second-hand automobile from a sales lot; (5) they drove to a point near the base of Cook's Peak and reasonably close to an unoccupied mine shack, where they unloaded their belongings; (6) defendant and Butch returned to Deming with the automobile and made arrangements to be taken back to Cook's Peak; (7) the three of them stayed in the shack, hunted and did some target practicing with the .22 rifle; (8) they secured water from a stock tank near the base of Cook's Peak and approximately three-quarters of a mile from the shack; (9) they were there only a couple of days when the woman wished to return to Deming; (10) defendant and Butch walked to Deming to get an automobile by which to return her; (11) they were both acquainted with decedent, who lived in Deming and who had a small sports car; (12) defendant invited decedent to go hunting with them in the mountains, and decedent accepted; (13) the following morning they drove back to the shack in decedent's car, and in the afternoon decedent, defendant and Butch started for water; (14) decedent and Butch were walking a few feet ahead of defendant who was carrying the .22 rifle; (15) Butch heard a shot from the rifle and saw decedent fall; (16) Butch claimed defendant had the rifle to his shoulder and pointed at decedent as he,

Butch, turned after hearing the shot; (17) defendant claims he did not intend to shoot decedent, that the gun discharged for some unknown reason, and that the homicide was an accident; (18) immediately after the shooting defendant dropped or laid the gun on the ground, looked at decedent, and decided he was dead from a shot wound in the head; (19) defendant then asked Butch to help him remove decedent's car keys, wallet and watch from decedent's body and to move the body a few feet to a fenced mine shaft into which they dropped it; (20) they immediately returned to the cabin, and defendant instructed the woman and Butch to pack things so that they could leave; (21) they left very shortly thereafter by means of decedent's automobile, and, according to Butch, defendant said they were going to Canada; (22) on more than one occasion defendant told the woman and Butch that they were as guilty as he and had better keep their mouths shut, although he did not state of what crime or crimes he considered them guilty; (23) defendant was taken into custody near Fargo, North Dakota for failing to pay a motel bill, Butch was later taken into custody in Michigan and the woman was taken into custody in Oregon.

Defendant first contends the trial court erred in instructing the jury "* * * on theory of felony-murder doctrine."

The instructions to which objection was made were substantially in the language of our statute (§ 40A–2–1, supra) and defined murder in the first degree as all murder perpetrated (1) by any kind of wilful, deliberate and premeditated killing; or (2) in the commission of or attempt to commit any felony; or (3) by any act greatly dangerous to the life of another, indicating a depraved mind regardless of human life; or (4) from a deliberate and premeditated design unlawfully and maliciously to effect the death of a human being.

The objection made to the instructions was as follows:

"* * * they do include as an element of first degree murder a homicide

resulting during the commission or attempt to commit another felony, and defendant objects to this as introducing a false issue of this case because there is no evidence that at the time of the killing there was any other felony being committed or attempted to be committed at that time and there is no substantial evidence to sustain such a finding that at the time of the killing from all the evidence introduced there was any perpetrating or attempting to perpetrate at that time any other felony and that this definitely allows an implied, not just implied but gives the necessary intent for first degree murder when there is nothing in the record to sustain it. * * * "

Obviously the objection was that there was no substantial evidence to support a finding that defendant was in the act of committing or attempting to commit any felony, other than homicide, at the time of the killing. This is the only claimed error in the instructions which was urged by defendant, and is his only claim of error in the instructions upon which he may now rely. State v. Justus, 65 N.M. 195, 334 P.2d 1104 (1959), cert. denied, 365 U.S. 828, 81 S.Ct. 714, 5 L.Ed.2d 706 (1961). See also State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968); State v. Compton, 57 N. M. 227, 257 P.2d 915 (1953); State v. Roybal, 33 N.M. 187, 262 P. 929 (1927).

Defendant denied he had any intention of shooting decedent or of unlawfully taking his automobile at that time. But, in our opinion, the evidence clearly supports a reasonable inference that defendant had already formed the intent to take the automobile and was in the process of executing that intent and committing the felony defined in § 64–9–4(a), supra, when the shooting occurred and before the death of decedent. Defendant was in need of an automobile to aid in the accomplishment of his purposes, and, immediately after decedent had fallen from the shot and appeared to be dead, defendant proceeded to search the body for the automobile keys and other valuables and to conceal the body by dumping it in the mine shaft. Thereafter, he promptly proceeded to pack and escape in decedent's automobile.

The felony-murder provision of our statute is clearly applicable once conduct in furtherance of the commission of a felony has progressed sufficiently to constitute an attempt to commit the felony, and an attempt has been accomplished when an overt act, in furtherance of and tending to effect the commission of the felony, has been performed or undertaken with intent to commit the felony. Section 40A–28–1, N.M.S.A.1953 (Repl.Vol. 6, 1964). There is ample evidence to support a finding that defendant had accomplished an attempt to unlawfully take decedent's automobile without decedent's consent before the bullet struck decedent in the head, and that defendant, at the time he killed decedent, either by shooting him, by dumping his body in the mine shaft, or by both, was in the act of committing at least this felony.

Defendant now urges that if he did not shoot decedent accidentally, as he contends, then the only other conclusion to be drawn from the evidence is that he wilfully, deliberately and with premeditation shot and killed decedent. This being the case, it was improper to instruct on the felony-murder provision of our statute, because the intent to commit murder supplied thereby was obviously unnecessary and inconsistent with the clear intent to commit the murder, and the inclusion of the felony-murder provision in the instructions destroyed and nullified his defense of accidental killing, in that the jury could very well have believed the killing was accidental and still have convicted him because a felony, other than wilful, deliberate and premeditated murder, was committed by him. Even if we were to concede his position to be correct, still he cannot now be permitted to rely thereon. This position is clearly beyond the scope of his objection to the instructions, and it cannot be reasonably urged that the mind of the trial court was alerted to this position, or defect in the instructions, if in fact it be a defect.

Although this court has never decided the precise question now presented by de-

fendant, and, for the reasons stated, we do not now decide it, we have held that if a homicide occurs within the res gestae of a felony, the felony-murder provision of our statute is applicable, and whether the homicide occurred before or after the actual commission of the felony is not determinative of the applicability of the felony-murder provision. Nelson v. Cox, 66 N.M. 397, 349 P.2d 118 (1960); State v. Nelson, 65 N.M. 403, 338 P.2d 301 (1959), cert. denied, 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed.2d 115 (1959). As to definitions and explanations of res gestae and the matters and events encompassed therein under the felony-murder principle, see State v. Nelson, supra; 1 Anderson, Wharton's Criminal Law and Procedure, § 252 (1957) and cases therein cited.

■ Defendant next contends that if the felony-murder provision of our statute is here applicable, the trial court erred because the felony was not identified and felony was not defined. Defendant must fail in this contention for at least the following reasons: (1) the felony of unlawfully taking a motor vehicle, contrary to the provisions of § 64–9–4(a), supra, was defined, and, as already stated, defendant was convicted thereof, and no attack is here made upon that conviction, except to the extent of the indirect attack thereon referred to in defendant's final point; (2) defendant made no requests for further identification or definition of the felony relied upon by the State, and, therefore, cannot now be heard on this question. State v. James, 76 N.M. 376, 415 P.2d 350 (1966).

■ Defendant's final point relied upon for reversal is that the trial court erred in instructing on the charge of unlawfully taking a motor vehicle after instructing on the felony-murder provision of our statute under the murder charge. His position is "* * * that if the unlawful taking of the motor vehicle constitutes the felony, then it is merged into the murder charge of Count 1 under the felony-murder doctrine. * * *"

If in fact there was any such merger, defendant failed to raise the issue in the trial court. The substance of the only objection made to the court's instructions is quoted above, and this cannot reasonably be construed as an objection to the instructions on unlawfully taking a motor vehicle, and particularly so on the ground this charged offense was merged in the murder charge. In fact the objection was clearly confined to the giving of instructions on the felony-murder provision of our murder statute, and the extent of the objection was that there was a lack of substantial evidence to support a finding that any felony, other than premeditated murder, was being committed or attempted at the time of the killing. The substance of the evidence in this regard has been discussed above.

The judgment of the trial court should be affirmed.

It is so ordered.

COMPTON, C. J., and MONTOYA, J., concur.