617 P.2d 873

STATE of New Mexico,
Plaintiff–Appellee,

v.

Robert Joseph BARRY,
Defendant–Appellant.

No. 4462.

Court of Appeals of New Mexico.

Aug. 5, 1980.

Writ of Certiorari Denied Sept. 25, 1980.

Robert R. Harris, El Paso, Tex., John E. Keithly, Anthony, for defendant–appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Sante Fe, for plaintiff–appellee.

## OPINION

WALTERS, Judge.

Convicted in a non–jury trial of possession with intent to distribute over one hundred pounds of marijuana, defendant now appeals denial of a pre–hearing motion to suppress evidence introduced against him. We affirm.

Drug Enforcement Agency agents negotiated, through a reliable informant, for the purchase of 250 pounds of marijuana from Nick Marion, defendant's unindicted co–conspirator. A rented vehicle furnished to the informant by the agents was exchanged by the informant with Marion, and Marion drove the rented vehicle to a house located on Apache Gold Loop in Santa Teresa, New Mexico, to pick up the marijuana. He was followed to the location by DEA agents. Agents and State Police officers observed Marion enter the garage of one of the residences at the end of the Loop. Because they feared detection, they could not get close enough to determine whether Marion entered the residence located at 126 or 130 Apache Gold Loop.

Agents again followed Marion as he drove to meet the informant and arrested him as he attempted to make delivery. A telephone pager and garage door opener were seized from Marion at that time.

In the meantime, other agents had returned to Apache Gold Loop to investigate which of the two residences Marion had entered to obtain the marijuana. The occupant at No. 126 consented to a search of his premises and the agents found nothing. At about the same time, one of the arresting agents and others returned to the area with the pager and garage door opener. As they approached the residence, the message, "Nick, this is Bob; call me at home," came over the telephone pager they had seized from Nick Marion. They then went to 126 Apache Gold Loop and asked the occupant for information regarding his neighbor at No. 130. He confirmed what the informant had earlier told agents, i. e., that the neighbor owned a yellow sports car, was employed as an artist, and generally met defendant's physical description known to the officers.

As they walked up the driveway of 130 Gold Apache Loop, one of the officers pressed the garage door opener and the door at 130 Apache Gold Loop opened. As soon as the garage door activated and started going up, the agent pushed the button and when the door reached the top, it immediately started down again.

However, in the "couple of seconds" that the door was open, the agents saw within the garage a yellow sports car and what appeared to be a large amount of marijuana in the middle of the floor, and they smelled marijuana. The officer who operated the opening device said that "[t]he purpose of activating that garage door opener was to ascertain that that house was definitely the house." They proceeded then to the front entrance of No. 130.

Defendant answered the agents' knock at the front door and he was advised that Marion had been arrested. He acknowledged that he owned the pager and garage door opener shown to him by the agents. When told that the agents wanted to search the residence for marijuana, he asked if a search warrant was needed. He was advised that he could consent; that if he would not give consent, a search warrant would be obtained. One of the officers said "We want the rest of the marijuana," and Marion allegedly told him they "would have to obtain a search warrant to get it."

All of the above information, together with an assertion that affiant felt the contraband would be destroyed or removed if the premises were not searched immediately, was contained in an affidavit for search warrant. The warrant was issued, the

premises thereafter searched and the marijuana seized; and defendant was arrested.

The issue presented is whether the opening of the garage constituted an illegal search and, if so, whether it in turn formed the basis for an invalid warrant.

■ We would agree with appellant that if the electronic intrusion made here by the officers were made for the purpose of obtaining evidence of sufficient facts upon which to base an affidavit for issuance of a search warrant, it was an illegal search, and the facts so gained would sufficiently taint the affidavit to require holding the warrant invalid as "fruit of the poisonous tree." *See Wong Sun v. United States*, 271 U.S. 471, 82 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 25 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The trial court decided, however, in its letter opinion to counsel that the officers had "an extraneous valid reason" other than to illegally "search" the garage for operating the garage door opener. They used it solely for the purpose of identifying the residence and, in so doing, inadvertently observed and smelled the evidence.

■ Ultimately we do decide that there were sufficient facts recited in the affidavit for warrant, extraneous of the information about the contents of the garage, to justify issuance of the search warrant. *See State v. Luna*, 93 N.M. 773, 606 P.2d 183 (1980). The probable cause determination is to be made by a disinterested magistrate, and does not depend on the officer's opinion of the existence or lack of probable cause. *State v. Torres*, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970). But in reaching that conclusion, we wish to make it clear that even if it could be said that opening the garage door was an unconstitutional search, we view the inadvertent glimpse of the evidence inside the garage as falling within the "independent source" or "inevitable discovery" doctrines raised and rejected in *Crews v. United States*, 389 A.2d 277 (D.C.1978), but recognized by the Supreme Court in its review of the Court of Appeals decision. *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

In *State v. Williams*, 285 N.W.2d 248 (Iowa 1979), is Justice Albee's compendium of courts and commentators which have considered the "inevitable discovery" rule. We will not repeat the prodigious citation undertaken by Justice Albee; we refer the reader to his scholarly analysis and the authorities consulted. The essence to be extracted from the many sources is this: The "vast majority" (285 N.W.2d at 256) of all courts which have considered the inevitable discovery rule have accepted it as an exception to the rule requiring suppression of evidence which is "fruit of the poisoned tree" when two tests are satisfied: (1) that the police have not acted in bad faith to hasten the discovery of the questioned evidence, and (2) that there is proof the evidence would have been found without the impermissible act, and how that discovery would have occurred.

Both of those tests are met in the case. As Justice Albee points out at 285 N.W.2d 259, bad faith is more than just acting unlawfully, because if the police conduct were lawful there would be no constitutional issue to advance. The motive for the conduct becomes a paramount consideration in evaluating good or bad faith. Thus, if we assume for the purpose of this discussion—and only to assure defendant that the constitutional argument has not been overlooked—that the use of the garage opener was unlawful, the record cannot support even an inference of bad faith. The officers had sufficient probable cause to obtain a search warrant without the information gained from the view afforded when the garage door opened; there is no evidence nor reasonable inference that the device was activated for any purpose other than to positively identify the residence from which they knew marijuana had been transferred to the rented vehicle used by Marion; and the same evidence would have been discovered, as it was, upon execution of the valid search warrant that ultimately was obtained in connection with the uninterrupted investigation being conducted in this matter by drug enforcement officers.

■ Another reason will support our holding that the use of the door opener was not an invasion of defendant's constitutional rights under the Fourth Amendment. Unless Barry had a justifiable, reasonable, or legitimate expectation of privacy in the entrance to his garage, there could be no intrusion into a constitutionally protected area. *See Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (Ct. App.1976). Barry relinquished any such expectations when he provided the means of entry, at least to his garage, to another. To paraphrase the language of *Smith v. Maryland, supra,* 442 U.S. at 743, 99 S.Ct. at 2582, at 61 L.Ed.2d 228, 229 "[a]lthough petitioners conduct may have been calculated to keep the contents of his [home] private, his conduct was not and could not be calculated to preserve the privacy of [his garage;] . . . a person has no legitimate expectation of privacy in [premises] he voluntarily turns over to third parties."

■ It was said in *United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976), that when one entrusts to another the means by which incriminating evidence may be revealed to government authorities, he takes the risk of disclosure and forsakes any legitimate expectation of privacy in what might otherwise be held to be a constitutionally protected area. That analysis dictates our conclusion that possession by Marion of Barry's garage door opener destroys any contention by Barry that, under the circumstances, his expectation of privacy was justifiable. There is no evidence to show how long Marion had access to the garage. But when one chooses to dilute his exclusive possession of any part of the premises by granting access to another, he loses the expectation of privacy he would otherwise enjoy, because he then subjects his privacy to the comings and goings of another, and to anyone else who might accompany his co–possessor or pass within viewing range of the exposed area. *Cf. State v. Chort*, 91 N.M. 584, 577 P.2d 892 (Ct.App.1978) (garden enclosed by 5–foot solid fence provides actual expectation of privacy); *but see State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (Ct.App.1976) (open area around curtilage not location to which defendant has reasonable expectation of privacy).

If, as was held in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), unexpected discovery of incriminating evidence by a police officer, who has justification for an intrusion, permits seizure of the evidence without a warrant and introduction of it at trial, it would be wholly illogical to hold that chance evidence seen by a police officer during the process of identifying suspected premises should be suppressed, especially after it has been obtained under a valid search warrant.

Finally, evidence of the trial court's finding that the use of the door opener was only to "properly identify the house" is to be viewed from the standpoint of substantial evidence to support, and in the light most favorable to an affirmance of, the finding. *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975). There is no weakness in the evidence on that issue.

Defendant's conviction is affirmed.

LOPEZ and ANDREWS, JJ., concur.