781 P.2d 1159

STATE of New Mexico, Plaintiff–Appellee,

v.

Gary CORNEAU, Defendant–Appellant.

No. 10518.

Court of Appeals of New Mexico.

May 16, 1989.

Certiorari Denied July 17, 1989 and July 27, 1989.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

The court's opinion filed March 21, 1989, is hereby withdrawn and the following substituted therefor. Defendant appeals his convictions for criminal sexual penetration in the second degree (CSP II) contrary to NMSA 1978, Section 30–9–11(B)(4) (Repl. Pamp.1984)[1] and for false imprisonment contrary to NMSA 1978, Section 30–4–3 (Repl.Pamp.1984). He makes the following contentions on appeal: (1) The trial court erred in allowing the state to use false imprisonment as the underlying felony for CSP II *and* as a separate offense when there was no evidence of force or restraint separate and apart from the force used to "cause" the sexual intercourse. Therefore, defendant urges, the highest offense for which he could be convicted was criminal sexual penetration in the third degree (CSP III) contrary to Section 30–9–11(C), with false imprisonment as the proper lesser included offense. (2) Related to this issue, the trial court erred in refusing to give defendant's requested instruction on CSP III. (3) The trial court erred in granting the state's motion for joinder of two criminal cases involving different victims. (4) The trial court erred in denying defendant's motion to suppress the fruits of a

warrantless search. (5) Defendant was denied effective assistance of counsel.

We hold it was not error, under the facts of this case, for the trial court to submit to the jury the offenses of CSP II, with false imprisonment as both the underlying felony and a separate crime. Defendant's double jeopardy rights were not violated, notwithstanding guilty verdicts on both charges, since the trial court entered judgment running the sentences concurrently. We also hold, however, it was error not to instruct on CSP III and, therefore, we reverse and remand for a new trial on the charges of CSP II and false imprisonment. Because the jury acquitted defendant of all charges involving one victim, and reversal and remand for a new trial of the charges involving the other victim is required, we need not reach the joinder issue. We do decide the suppression of evidence question, since that issue will likely arise on retrial. We hold that the evidence was not improperly admitted. Finally, we hold that defendant was not denied effective assistance of counsel. Accordingly, we reverse and remand for new trial.

## FACTS

Defendant was originally charged with committing false imprisonment and CSP II against two victims. Although separately indicted, defendant was tried for the offenses against both victims in one trial, after the state's motion to join the two indictments was granted. Defendant was acquitted of all offenses relating to the first victim and was convicted on the counts involving the second victim, from which he now appeals.

The second victim met defendant at a Santa Fe nightclub in May 1987, when defendant offered her a ride home. According to the victim, defendant stopped at his residence instead of taking her directly home. She waited outside the premises in defendant's vehicle for approximately ten to fifteen minutes while defendant went inside. Defendant then returned to his vehicle and asked the victim to come inside, which she agreed to do so she could use the

1. Subsequently amended. *See* NMSA 1978, § 30–9–11 (Cum.Supp.1988).

restroom. Once they were inside, defendant opened a can of beer and talked with the victim. He began to make sexual advances, which the victim rebuffed. She then asked him whether he was going to take her home. He responded, "You're not going anywhere."

The victim testified that defendant then forced her to his bed and forced her to have sexual intercourse after she resisted him and after he made several threats, including a threat to kill her. She hid her wallet between the bed and the wall to corroborate her version of what occurred or so she could be identified if defendant did kill her. Afterwards, the victim dressed, went to the living room, managed to unlock the front door while defendant turned his back, and ran out of the house. The victim threw her shoe against a neighbor's window to obtain assistance. She successfully roused that neighbor, the landlord, and telephoned the police from his residence.

The police arrested defendant and took him into custody. After defendant was in custody, the police entered his apartment on three separate occasions. First, the officers at the scene made an initial search of defendant's apartment to determine whether there were any additional suspects, victims, or weapons inside. After this first entry, the victim told the police she had left her wallet in the apartment and had lost a button from her clothing. The police officers were uncertain whether they could legally re-enter the apartment to search for those items, absent a warrant. Following departmental policy, they telephoned an assistant district attorney, who gave them permission to proceed with the warrantless search based on exigent circumstances. During this second search, the officers recovered the victim's wallet, but did not seize the button, even though one of the officers saw it. The third entry occurred several days later, after another officer, who was not present the night of the crime, had obtained a warrant. The button was seized as evidence during this third search.

## CHARGE OF CSP II

The offense of CSP II as charged in this case and as set out in Section 30-9-11(B) "consists of all criminal sexual penetration perpetrated ... (4) in the commission of any other felony." Criminal sexual penetration is the "unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse." § 30-9-11. The offense of false imprisonment, defined in Section 30-4-3, "consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." CSP III consists of all criminal sexual penetration perpetrated through the use of force or coercion. Defendant was charged with CSP II because he was allegedly engaged in the felony of false imprisonment when he committed the act of CSP. He was not charged with CSP III.

As we understand defendant's argument, he contends that, because false imprisonment is properly a lesser included offense of CSP III, it should not be used as the underlying felony to enhance that crime to CSP II. He argues that the same "force or coercion," see NMSA 1978, § 30-9-10(A) (Repl.Pamp.1984), necessary to establish CSP III constitutes the restraint necessary to prove false imprisonment. Thus, according to defendant, since the same proof of force is required to establish CSP III as to establish false imprisonment, to permit false imprisonment to elevate the act to CSP II effectively nullifies the crime of CSP III. He urges that CSP III was the only proper charge and that false imprisonment is the proper lesser included offense of that charge.

Defendant presents double jeopardy and merger arguments, which we find inapplicable. Merger is an aspect of double jeopardy that applies to the concept of multiple punishment when multiple charges are brought in a single prosecution. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). In *State v. Srader*, 103 N.M. 205, 704 P.2d 459 (Ct.App.1985), we held that the defendant's double jeopardy rights were protected because he was given concurrent sentences for the three

crimes upon which he was convicted, thereby escaping multiple punishment. *Id.* at 206, 704 P.2d at 460. In the present case, defendant was sentenced to concurrent terms for CSP II and false imprisonment. Pursuant to *Srader*, we reject defendant's double jeopardy and merger claims, since defendant's sentences for CSP II and false imprisonment are to run concurrently.

Although defendant uses the terms "double jeopardy" and "merger," in essence, his argument is one of legislative intent. He argues that the state's charging pattern in this instance does not rely on an independent felony to aggravate CSP III to CSP II. Thus, according to defendant, the state's charging pattern in effect nullifies the legislatively created offense of CSP III, because almost every act of causing a person to engage in sexual intercourse through the use of physical force or violence necessarily involves restraining or confining that person against his or her will without lawful authority. Defendant's argument is analogous to the independent felony rule utilized in those jurisdictions having a felony murder theory of homicide. In those jurisdictions, it has been held that, in order for a defendant to be charged with felony murder, the underlying felony must be independent or collateral to the homicide. *See Sullinger v. State*, 675 P.2d 472 (Okla. Crim.App.1984); Annotation, *Application of Felony–Murder Doctrine Where the Felony Relied Upon Is an Includible Offense With the Homicide*, 40 A.L.R.3d 1341 (1971).

■ We reject this argument. We recognize that determining whether an offense is a lesser included offense requires us to look at the particular facts of the case to see whether the greater offense could be committed without necessarily also committing the lesser. *State v. DeMary*, 99 N.M. 177, 655 P.2d 1021 (1982). Ordinarily, almost any act of CSP will involve a restraint or confinement that would constitute false imprisonment. However, we disagree with defendant's contention that the facts in this case do not support a finding of false imprisonment before or after the forcible intercourse. Evidence exists in the record to support a finding by the jury that the underlying felony of false imprisonment was separate and apart from any false imprisonment necessarily involved in almost every act of CSP.

■ False imprisonment does not require physical restraint of the victim; it may also arise out of words, acts, gestures, or similar means. *State v. Muise*, 103 N.M. 382, 707 P.2d 1192 (Ct.App.1985). The restraint need be for only a brief time. *Id.*

■ In this case, before defendant sexually assaulted the victim and when she asked him to take her home, he threatened her by saying, "You're not going anywhere." He then dragged her from the living room to the bedroom where the CSP occurred. These facts alone satisfy the elements of false imprisonment in that defendant, using both words and acts, confined the victim against her will without the lawful authority to do so.

Moreover, after the act of CSP was completed, defendant continued to falsely imprison the victim until she escaped. When defendant allowed the victim to go to the bathroom to dress, he demanded that she keep the bathroom door open. He demanded to know what she was doing when she went to unlock the apartment door. When she eventually managed to undo the second lock and run out of the apartment, defendant chased her. The events following the CSP clearly indicate he utilized verbal restraint as well as actions in order to continue to falsely imprison the victim.

In contrast, the force defendant used to perform the act of CSP could be viewed as separate and distinct from this false imprisonment. He pushed the victim down on the bed, and put his hand over her mouth. She resisted him, and he pushed her down on the bed once again. Although these actions do constitute a false imprisonment, the jury could find them to be distinct from the false imprisonment which preceded and followed the CSP.

■ The act of CSP is not a continuing offense; it is completed upon penetration. *See State v. Ramirez*, 92 N.M. 206, 585

P.2d 651 (Ct.App.1978). Thus, any restraint after the completed CSP is separate from the CSP itself, not inherent in the CSP, and does not constitute the same "force or coercion" necessary to establish CSP. By the same token, on the facts we have before us, the restraint which preceded the act of CSP was not the same "force or coercion" necessary to establish CSP, or the same restraint inherent in CSP.

Defendant's argument may apply in other fact situations where it would be inappropriate for the state to use false imprisonment as the underlying felony to aggravate CSP III to CSP II. For example, when two individuals voluntarily spend a portion of an evening together and have some physical contact, but the defendant then forces the victim to engage in further sexual activity against her will, including forcible sexual intercourse, the same force the defendant utilized to commit CSP could be considered the same force used to falsely imprison the victim. We find the present case factually distinct from such a scenario; therefore, we cannot find as a matter of law that defendant's legislative intent argument is applicable.

In his brief in support of his motion for rehearing, defendant argued that the CSP was not perpetrated *"during* the commission of false imprisonment" (emphasis in original), since we determined in our prior opinion that a view of the evidence supports a finding that the false imprisonment was present before and after the CSP. *State v. Martinez*, 98 N.M. 27, 644 P.2d 541 (Ct.App.1982), answers this contention adversely to defendant.

The defendant in *Martinez* was convicted of CSP II perpetrated during the commission of a burglary. The defendant argued that, since burglary is complete upon breaking and entering with the intent to commit a felony or theft, *see State v. Madrid*, 83 N.M. 603, 495 P.2d 383 (Ct.App. 1972), any CSP occurring after the burglary could not have been perpetrated "in the commission of" the burglary.

 The court noted that the phrase "in the commission of" any felony that appears in the CSP statute also appears in the felony-murder statute. *See* NMSA 1978, § 30–2–1(A)(2) (Repl.Pamp.1984). In that context, if a homicide occurs within the res gestae of the felony, it occurs in the commission of the felony whether it occurs before or after the felony. *State v. Flowers*, 83 N.M. 113, 489 P.2d 178 (1971); *State v. Martinez*. A homicide is within the res gestae of the felony if it is part of a continuous transaction and closely connected in time, place, and causal connection, with no independent intervening forces. *Id.* (citing *State v. Harrison*, 90 N.M. 439, 564 P.2d 1321 (1977), *superseded by rule on other grounds, Tafoya v. Baca*, 103 N.M. 56, 702 P.2d 1001 (1985)).

The court held the phrase had the same meaning in both the felony-murder and CSP statutes. Therefore, the court held that so long as the CSP was within the res gestae of the burglary, it occurred in the commission of the burglary.

 *Martinez* applies even more forcefully in the case before us since false imprisonment, unlike burglary, is an ongoing offense, not one which is complete as soon as the requisite elements have occurred. Applying the *Martinez* definition to the facts of this case, the CSP occurred in the commission of the false imprisonment. The trial court did not err in instructing the jury on CSP II perpetrated in the commission of the false imprisonment.

## FAILURE TO INSTRUCT ON CSP III

Defendant argues that the trial court erred in failing to give his tendered instruction for CSP III to the jury. We find defendant's argument persuasive and reverse the trial court on this ground.

Relying on *State v. Aragon*, 99 N.M. 190, 656 P.2d 240 (Ct.App.1982), the state contends defendant failed to preserve this issue for appeal because he did not make a clear and unequivocal request for the CSP III instruction. The state's reliance on *Aragon* is misplaced. In *Aragon*, the defendant made a request for a particular jury instruction, but later withdrew it, thereby negating any "clear and unequivocal" request. In the present case, defense coun-

sel specifically submitted the CSP III instruction to the trial court, but added it was "futile" to do so, because the trial court had previously rejected defendant's merger theory. Defense counsel informed the trial court he was tendering the instruction in order to preserve the issue for appeal. The trial court then specifically rejected the tendered jury instruction. The trial court marked the tendered instruction "Refused," not "Withdrawn."

At the time defense counsel offered the CSP III instruction, he made statements that indicate that the instruction was being tendered as a lesser, rather than a lesser included, offense. This, of course, was consistent with his theory that CSP III was the highest crime and false imprisonment the only proper lesser included offense. In denying defendant's motion for directed verdict, the trial court had rejected that theory. Therefore, to have submitted the CSP III instruction as a lesser included offense to CSP II, defendant would have been retreating from his position. He apparently did not want to do that, but at the same time did not want to lead the court into error by offering CSP III as a lesser included offense. As we discuss below, the giving of CSP III as a lesser included offense would not have been error. In fact, it was warranted under the facts. Notwithstanding the manner in which the tender was made, we believe that the trial court actually refused that instruction under the mistaken belief that it was not justified under the facts. The trial court said, "In my view, the proffered instructions by the defendant, which essentially describe third degree felonies—CSP's—the Counts I and I in both indictments—are not acceptable, are not consonant with the evidence in this particular case, and are denied for that reason. They will be rejected." This statement indicates the trial court believed defendant had made a tender; otherwise, there would have been no need to rule on the offer. Therefore, it would appear that even though defendant's tender may have been somewhat less than clear or unequivocal, the trial court rejected the instruction as not being supported by the evidence. In this, we believe the trial court erred. Under these circumstances, defendant did not fail to preserve this issue for appeal.

 In criminal cases the jury must be instructed on all lesser included offenses if the evidence supports such instruction and the instruction is requested by the defendant. *State v. Benavidez*, 94 N.M. 706, 616 P.2d 419 (1980), *overruled on other grounds, Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982). Failure to do so is reversible error. *State v. Trammel*, 100 N.M. 479, 672 P.2d 652 (1983). Even if the requested instruction is contrary to the defendant's initial case theory at trial, the requested instruction must be given if supported by the evidence. *State v. Privett*, 104 N.M. 79, 717 P.2d 55 (1986).

In *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985), the defendant tendered jury instructions for third degree criminal sexual penetration and false imprisonment, which the trial court rejected. The defendant was convicted of CSP II based on the victim's testimony that defendant had forced her to have intercourse through use of a deadly weapon. The weapon, a knife, was not produced at trial as evidence. *Id.* at 778–79, 701 P.2d at 377–78. We held in that case that it was appropriate to instruct the jury on CSP III because the evidence could have supported a finding by the jury that the defendant raped the victim, but did so while unarmed. *Id.* at 779, 702 P.2d at 378. Thus, the evidence could sustain a verdict that "third degree criminal sexual penetration was the highest degree of the crime that occurred." *Id.*

██ We find *Fish* applicable in the present case. Evidence from the record could sustain a jury's finding that defendant committed CSP III. Specifically, the jury could believe the victim that the CSP was with force, not consensual, and believe defendant that he did not restrain the victim separate and apart from force used for the CSP. Thus, the jury could find from the evidence that the sexual intercourse occurred by coercion or force, but without the requisite elements of false imprisonment as an independent felony.

We reject the state's contention that instructing the jury on CSP III would "fragment" the evidence, and that such an instruction would lead to acquittal. *See State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979), *overruled on other grounds, Sells v. State.* With appropriate jury instructions, no fragmentation of the evidence would occur, nor would there be a danger that such instruction could only lead to acquittal or conviction of the higher offense. The jury may decide whether the elements of false imprisonment exist independent of the force or coercion inherent in any CSP, thereby supporting a conviction of CSP II, or decide the evidence only supports a conviction of CSP III. To avoid confusing the jury, SCRA 1986, 14–6002 (necessarily included offense) should precede any CSP III instruction.

Pursuant to *Trammel,* we find the failure to instruct the jury on CSP III reversible error in the present case.

## FAILURE TO SUPPRESS

Defendant argues the wallet and button belonging to the victim were the fruits of a warrantless search and should have been suppressed. The trial court allowed the wallet to be admitted, based on the exigent circumstances exception to the warrant rule and the inevitable discovery exception, and allowed the button under the independent source exception.

We reject the state's contention that defendant waived the issue by failing to renew his objection to the evidence at trial after losing a pretrial motion to suppress. The record of the pretrial motion to suppress was submitted with defendant's appeal; therefore, the state's reliance on *State v. Hall,* 103 N.M. 207, 704 P.2d 461 (Ct.App.1985) is misplaced. *See also State v. Mason,* 79 N.M. 663, 448 P.2d 175 (Ct. App.1968) (holding that a defendant need not renew objection at trial when issue is fully preserved prior to trial).

Generally, a warrantless search is, per se, unreasonable, unless it falls within an exception to the warrant requirement. *State v. Crenshaw,* 105 N.M. 329, 732 P.2d 431 (Ct.App.1986). Exceptions to the war-

rant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view. *Id.*

### 1. *Exigent Circumstances*

Exigent circumstances are defined as those situations where immediate action is necessary "to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986). Exigency of circumstances involves a determination of whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary. *Id.* Determining exigent circumstances is a question for the trial court, whose decision will be upheld on appeal if supported by substantial evidence. *Id.* We hold the evidence in the present case does not support a determination of exigent circumstances permitting a warrantless search.

Prior to the second search of the apartment, during which the victim's wallet was seized, defendant had been arrested and transported from the scene. The police had previously searched the apartment to determine whether other suspects, victims, or weapons were present. None were found. The state argues additional exigent circumstances existed, based on the difficulty of securing the apartment with officers until a search warrant could be obtained. According to the state, this security was necessary because defendant had a roommate and because the landlord was "hostile" to the police investigation, having indicated he wanted to clean defendant's apartment, which might have destroyed the evidence.

Testimony by law enforcement officers at the motion to suppress hearing established that the apartment could have been adequately secured by the presence of two or three officers, pending the acquisition of a warrant. Additional testimony indicated that as soon as police informed the landlord the apartment was a crime

scene, the landlord walked away. The state presents no convincing reasons why the police would have been unable to secure the area until a search warrant was obtained, except that it would have taken some period of time to secure a warrant because the incident happened early on a Saturday morning. Inconvenience to law enforcement officers is not a listed element for exigent circumstances. *See State v. Copeland.* Therefore, we reject exigent circumstances as a basis for the search.

### 2. *Inevitable Discovery*

■ The trial court additionally ruled the wallet admissible based on the inevitable discovery rule. In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court held that evidence originally obtained through illegal means, which would, in all likelihood, inevitably have been discovered through independent lawful means, is admissible at trial. As described in *Nix,* the inevitable discovery rule is based on the view that, since the tainted evidence would be admissible if discovered through an independent source, it should be admissible if it inevitably would have been discovered. *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472, 481–82 (1988). *See* Annotation, *What Circumstances Fall Within "Inevitable Discovery" Exception to Rule Precluding Admission, in Criminal Case, of Evidence Obtained in Violation of Federal Constitution,* 81 A.L.R.Fed. 331 (1987). The court in *Nix* sought to balance on one hand the need to deter possible police misconduct by ensuring that the prosecution is not put in a better position than it would have been in if no illegality had transpired, but, at the same time, to ensure that the prosecution not be put in a *worse* position by the operation of the rule than it would have been in but for the improper police conduct.

[I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial pro-

ceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the State in a *worse* position than it would have occupied without any police misconduct.

*Nix v. Williams,* 467 U.S. at 447, 104 S.Ct. at 2511 (emphasis in original). The inevitable discovery rule is, in reality, an extrapolation from the larger "independent source" exception to the exclusionary rule. *Murray v. United States.* "Inevitable discovery" relates to evidence that was seized unlawfully but would have been seized independently and lawfully in due course, while the term "independent source" applies to evidence that has been obtained independent of "tainted" or possibly "tainted" information. *Id.* We agree with the trial court that the wallet in the present case was admissible under the inevitable discovery rule.

*Nix* was decided subsequent to our decision in *State v. Barry,* 94 N.M. 788, 617 P.2d 873 (Ct.App.1980), in which we held that the inevitable discovery rule would allow admission of evidence obtained without a warrant when the prosecution (1) establishes that the police have not acted in bad faith to hasten the discovery of the evidence in question, and (2) shows the evidence would have been discovered without the impermissible act. *Id.* at 790, 617 P.2d at 875. *Nix* apparently removed the good faith requirement.

■ In the present case, the trial court could reasonably find the wallet would inevitably have been discovered by law enforcement officers independent of their warrantless search. The victim specifically informed the officers of the existence and location of the wallet and button before the warrantless search. This information alone furnished sufficient probable cause for the search warrant which was later obtained by an officer who was not present on the scene the night of the crime. In addition, from the scene of the crime the police officers contacted an assistant district attorney to inquire whether it would

be permissible to enter the premises to search, and were told to proceed. The only claim of bad faith present here is the substitution of an assistant district attorney's judgment for that of a neutral magistrate. While we do not condone the substitution of the district attorney's opinion for that of a neutral magistrate in authorizing searches, we do not find the deterrence purpose of the fourth amendment furthered by the exclusion of evidence in the present case.

We recognize that, in another case, law enforcement officers' conduct may involve actual bad faith. We leave the question of the good faith test required under *Barry,* but apparently removed in *Nix,* to be answered in such a case. *See* 4 W. LaFave, *Search and Seizure* § 11.4(a), at 382 (2d ed. 1987); *State v. Garcia,* 76 N.M. 171, 413 P.2d 210 (1966) (adopting United States Supreme Court exclusionary rule in fourth amendment violation cases). We uphold the trial court's finding that the wallet would inevitably have been discovered pursuant to the search conducted under the search warrant, and that the officers acted in good faith in this instance; therefore, the evidence was properly admitted at trial. *See United States v. Silvestri,* 787 F.2d 736 (1st Cir.1986), *cert. denied,* 487 U.S. 1233, 108 S.Ct. 2897, 101 L.Ed.2d 931 (1988) (post–*Nix* decision holding evidence of drugs admissible at trial because search warrant inevitably would have been sought and issued even if illegal search had not taken place).

We note that some federal circuits have adopted the position that, in order to qualify under the inevitable discovery exception, it must be proven in most cases not only that the evidence would inevitably have been discovered by lawful means, but also that the police already possessed the lawful means and were pursuing them prior to the illegal conduct. *E.g., United States v. Cherry,* 759 F.2d 1196 (5th Cir.1985), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *United States v. Romero,* 692 F.2d 699 (10th Cir.1982). At

least one other circuit has rejected this position in cases such as this one, where an independent search warrant was actually obtained and executed after the illegal conduct. *United States v. Silvestri.* The *Silvestri* court declined to adopt a fixed rule, holding that the facts of each case would determine whether the independent investigation must be contemporaneous with the illegal conduct. We decline to adopt a position on this issue because it was not raised on appeal. We believe such a potentially important position should be adopted only after full briefing and consideration of the issues.

### 3. *Independent Source*

On appeal, defendant does not address the finding that the button was admissible under the independent source exception. He instead proceeds as if both the button and wallet were admitted under the exigent circumstances and inevitable discovery exceptions. Therefore, he has waived any argument that the button was improperly admitted under the independent source exception. *See Rhodes v. First Nat'l Bank of Hagerman,* 35 N.M. 167, 290 P. 743 (1930) (appellate court will not undertake general review of evidence for discovery of error not specifically pointed out); *see also State v. Wiberg,* 107 N.M. 152, 754 P.2d 529 (Ct.App.1988) (issues not briefed deemed abandoned).

### INEFFECTIVE ASSISTANCE

Pursuant to *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), defendant complains that his trial counsel should have disqualified Judge Encinias after the judge revoked defendant's original bond following the filing of the second charges. We reject this claim. SCRA 1986, 5–403, Revocation of Release, grants broad latitude to the trial court to revoke the release of an accused person if circumstances arising after the initial release indicate the release should not be continued. *See Tijerina v. Baker,* 78 N.M. 770, 438 P.2d 514 (1968). Exercise of that discretion provides no basis for disqualification. Trial coun-

sel's failure to disqualify did not constitute ineffective assistance of counsel.

CONCLUSION

We reverse and remand for new trial consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.